MOBILE, JACKSON & KANSAS CITY RAILROAD COMPANY *v.* ROBBINS COTTON COMPANY.

[48 South. 231.]

RAILROADS. *Common carrier. Loss of freight. Bales of cotton. Market value. Evidence.*

> That the owner paid a certain price for cotton is not alone, as a matter of law, sufficient evidence of its market value to justify a recovery of that price in an action against a common carrier for its loss.

FROM the circuit court of Union county.

HON. WILLIAM A. ROANE, Judge.

The Robbins Cotton Company, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor the defendant company appealed to the supreme court.

The opinion of the court states the facts.

*Flowers & Whitfield,* and *George W. May,* for appellant.

The court erroneously instructed the jury, in favor of plaintiff, that if they should find from the evidence that plaintiff

had delivered to the railroad company the seventeen bales of cotton and that this cotton was not delivered to plaintiff or to the compress company for plaintiff and that plaintiff never did receive the cotton or any cotton in its place, then "the jury must find for the plaintiff and assess the damage at the price paid by them for said cotton and for the freight paid the railroad company thereon, and six per cent. interest per annum on said amount from the date of said failure to so deliver said cotton."

Remembering that the record fails to show the date or dates of the purchase or purchases of the cotton in controversy and that the cotton was delivered at different times between October 24, 1906, and March 6, 1907, a period of nearly five months, and at different stations along the appellant's line of railroad, the instruction cannot be upheld unless it affirmatively appeared that the market value of the cotton in controversy during the entire period from October, 1906, to March, 1907, was uniform and that such market value represented the exact price paid by appellee for the cotton alleged to have been lost by appellant. The record nowhere shows that all of the cotton was purchased at one and the same time, and it nowhere shows that the reasonable market value at the time of the alleged failure to make delivery in accordance with appellant's undertaking was equal to the amount paid by appellee, which the instruction makes the basis of the calculation in determining the amount of appellant's liability because of the alleged breach of carriage and delivery.

The very contract upon which this suit is brought expressly provides, in its third paragraph, that "The amount of any loss or damage for which any carrier may become liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computations. Claims for loss or damage must be made in writing to the agent at the place

of delivery promptly after arrival of the property, and if delayed for more than thirty days after the delivery of the property, or after due time from the delivery thereof, no carrier hereunder shall be liable in any event." The instruction above absolutely ignores the provisions of the contract, and lays down a new rule which is unsupported by any authority, so far as we can find.

If, instead of the market value, the railroad company or common carrier is compelled to pay the purchase price of any article lost, and a consignor has paid an excessive or foolishly extravagant price for a commodity which the carrier, through mere negligence, loses and fails to deliver, it will be readily perceived that a very great injustice would be worked upon the railroad company.

*C. Lee Crum,* for appellee.

The first instruction for plaintiff is criticized by learned counsel for appellant on the ground that it authorizes the jury, in case of a finding in plaintiff's favor, to assess the damages at the price paid for the cotton in the open market. The undisputed proof in the case is to the effect that plaintiff was in the business of buying and selling cotton upon the market, that it purchased upon the market at the market prices the seventeen bales of cotton in question. Appellee's representative said on his cross-examination, "We bought on the average of the season's prices and paid the reclamations on the basis of the selling prices." This is certainly presumptive evidence that the cotton was worth what plaintiff gave for it. It would be unreasonable and contrary to experience for the appellee to give more than the cotton was worth on the market. This proof is not conclusive that what appellee paid was the market price to the extent that appellant could not have rebutted this presumption with evidence if such had been in its possession. But appellant did not rebut it in any way, and there was no other proof of value and the court below properly instructed the jury that this presumption was sufficient to control them.

It is true that the price of cotton could have fluctuated between the dates of purchase and the date of shipment, and if appellant had shown such fluctuations the jury would have been bound by the prices at dates of receipt of the several bales; but in the absence of proof, when appellee's witnesses were not even cross-examined on the subject, no presumption of fluctuation can arise, and it must be held that there was none.

WHITFIELD, C. J., delivered the opinion of the court.

The appellee sued the appellant to recover the value of seventeen bales of cotton which it is alleged the appellant had failed to deliver to it according to its contract, manifested by bills of lading set out in the record. The testimony, we think, establishes sufficiently the failure to deliver the cotton sued for. The plaintiff attached to its declaration an exhibit, which is a bill of particulars, showing the various parties from whom it purchased the seventeen bales of cotton, the numbers of the bales of cotton, the places of shipment of the cotton along the line of the appellant's railroad, the weights of the cotton, and the prices paid by the appellee for the cotton per pound, running all the way from seven and one-half cents to ten and one-fourth cents per pound, and the value of each bale of cotton, making in the aggregate the amount paid by appellee for the seventeen bales to be $798.66. Not a particle of proof was introduced on either side to show what the market value of the cotton was at the time of the purchase and shipment. Not a witness was asked a question in relation to this market value of the cotton.

The plaintiff, whether inadvertently or not, wholly omitted to make this proof, and relies here upon the proposition that, since there is no other evidence in the record than the prices paid by the appellee, that is sufficient evidence of such market value, and the plaintiff obtained from the court the following instruction: "The court instructs the jury, for the plaintiff, that if they believe from the evidence that the plaintiff had de-

livered to the defendant railroad company, at the different stations named, the seventeen bales of cotton alleged to have been delivered for shipment, and that said cotton was not delivered to it, or to the compress company for it, and it did not receive said cotton from the railroad company, nor any other cotton in lieu thereof, the jury must find for the plaintiff, and assess the damage at the price paid by them for said cotton, and for the freight paid the railroad company thereon, and six per cent. interest per annum on said amount from the date of said failure to so deliver said cotton."

We cannot concur in the argument of appellee in support of this instruction. It is very easy to imagine a case, which might very readily occur, in which the purchaser of cotton might actually pay two or three times the market value of cotton in order to meet some contract of delivery of cotton, upon the meeting of which contract his credit and business entirely depended. Again, a purchaser might pay, being a bad judge of cotton, very much more for cotton than its market value. Manifestly, all that he could recover of the carrier for the failure to deliver would be, not what he might pay, but what the market value of the cotton was.

It follows that this first instruction is fatally erroneous, and for that reason the judgment must be reversed, and the cause remanded.                                    *Reversed.*